Milligan, J.,
delivered the opinion of the Court.
*186 Many years ago, George Elliott died in the State of Virginia, leaving a widow and five children, and a considerable estate, consisting of slaves, money, etc. The widow and her five children, invested a portion of the estate in a tract of land in Montgomery County Tennessee, and took the conveyance to themselves as tenants in common, and soon thereafter removed upon and cultivated the land. At this time some of the children were minors, and all the daughters unmarried. One of the daughters, Mary, afterwards married Thos. A. Haynes, and Sarah, James Blair. Soon after Mary’s marriage, her husband, Thomas A. Haynes desiring to separate his wife’s interest in the estate, agreed with all the other parties in interest, upon commissioners, or referees, to devide the slaves, and estimate the value of Mrs. Haynes’ interest in the land and other property. The commissioners met together, and made the division of the slaves, and estimated the value of Mrs. Haynes’ interest in the real and personal property, at the sum of $1,155.26, for which the other parties executed their bond to Haynes and wife, and they their joint receipt or acquittance in full of all claims against the estate.
Some time afterwards, Mrs. Blair died, leaving her husband, James Blair, and an infant child, Sarah E. Blair, the defendant, surviving her. James Blair seems to have been a man of considerable estate; and in 1857, he determined to remove to the State of Texas. But before going, he and the other parties in interest, except Haynes and wife, sold, and by deed, with cove'-nants of seizure, and warranty, conveyed the land in con *187 troversy to one Peter Peacber, for the sum of $49.50 per acre. The deed recites the consideration and the execution of the notes for the payment of the purchase money, and retains a lien therefor upon its face. The purchaser, Peacher, immediately took possession of the land, and has paid a portion of the purchase price, but still owes with the accumulated interest, about the sum of $20,000.
It further appears that Blair went to Texas, leaving his daughter in Tennessee with her relatives, and on his return early in 1860, he executed a Will, and died some short time thereafter. In his Will he bequeathed all his property, both real and personal, to his daughter, Sarah, with limitations over; in the event of her death under twenty-one years, without issue, of part to his family, and the remainder to his wife’s relatives. In the Will, the testator recites the sale of the land in contest, to Peacher, and provides in substance, if Peacher should pay the purchase money, and should thereafter be disturbed in the possession, by his daughter or any one claiming under her, that, “all costs, damages or injury,” that he or his assigns should thereby sustain, should be paid out of his estate, it being his intention to protect Peacher in his purchase; and to this end, he expresses a wish that his Will should receive a liberal construction.
John Elliott, the complainant, was appointed executor of the Will, and also testamentary guardian of the testator’s daughter, Sarah Blair; and as such, he has qualified in both capacities, in the County Court of Montgomery County,
*188 In 1860, Peacher being in failing circumstances, conveyed a portion of the land purchased as aforesaid, with other property, to B. O. Kesee, for the payment of certain debts in the order mentioned in the deed. Shortly after the execution of this trust, the firm of K. H. Short & Co., of the City of New Orleans, as creditors of Peacher, filed their bill in the Chancery Court of Montgomery County, alleging that the deed from Peacher to Kesee, as trustee, was founded upon fictitious considerations, and that it was therefore fraudulent and void. The bill sought to attach the property conveyed, and prayed that the deed be set aside, or the property sold, and the complainant’s debts satisfied out of the surplus, etc.
By consent of all parties, in Oct., 1860, the Chancellor decided that the property be sold, and B. O. Kesee was appointed commissioner to conduct the sale, with instructions to report his action to the Court. Under this order the sale was made by the commissioner, and W. II. Drane became the purchaser of the land, amounting, as was supposed, to about 350 acres, at $50 per acre. But, in consequence of some disagreement between the purchaser and the commissioner, as to the precise number of acres contained in the tract, he did not at the date of the sale, execute his notes for the purchase money. The sale, however, was reported to the Court, and a survey of the lands ordered. The survey was made, and the quantity of land sold, accurately ascertained to be 360 acres. But, before the report of the survey was made, the war intervened, and suspended all further action until 1865, *189 when the report of survey was made, and confirmed by tbe Chancellor. At this time, the purchaser’s payments for the land — he having entered into possession under the terms of the sale — being all due, a claim was made against him for the principal and interest of the purchase money, and the title divested and vested in Drane, subject, however, to a lien for the unpaid purchase money.
But, prior to this, in the year 1861, the complainant Elliott, as executor of Jas. Blair, deceased, and the other vendors to Peacher, had filed their petition in said cause to assert their lien upon the property, for the unpaid purchase money, and the Chancellor directed that so much of the judgment as was obtained against Drane, as was necessary to satisfy the original unpaid purchase money, be applied for that purpose, and the remainder to be held by the commissioner, to be appropriated to the other creditors under the future order of the Court.
Some short time, as it seems, after the adjournment of the Court in 1865, at which the decree against Drane was pronounced, it was discovered that there was a defect in his title to a portion of the lands purchased by him at the Commissioner’s sale; and that the interests of Haynes and wife and the defendant, Sarah E. Blair, had never been conveyed to Peacher.
The attempted partition of the land between the widow and heirs of George Elliott, deceased, was found not to . be in conformity to law, and the legal title still remained in Mrs. Haynes; so, also, was the conveyance of James Blair inoperative to pass to Peacher, *190 under whom Drane derived title, any interest but his title by the courtesy, leaving at his death the fee in an undivided interest in the land, in his daughter, Sarah E. Blair.
Pending this litigation, Haynes and wife executed a deed in due and legal form, with privy examination, for their undivided interest in the land, to the complainant, John Elliott; and this bill is now filed by him as testamentary guardian of the defendant, Sarah E. Blair, to have the sale to Drane perfected by divesting her interest in the land, and thereby perfecting Drane’s title.
In the meantime, Drane died, having previously made and published his last Will and testament, by which he devised his estate to his wife, Eliza Drane, and also appointed her his executrix. . She comes into court and resists this application, and her attorney is appointed guardian ad litem of Sarah Blair, who, as before shown, is made a party defendant.
Added to this complicated state of facts, in 1867, Mrs. Drane filed her cross-bill, by which she seeks to set aside the sale to her husband, made under the decree of the Chancellor, on the grounds of fraud and want of jurisdiction in the Court.
The proof shows that James Blair’s estate, besides lands in Texas and Missouri, amounts to some $10,000 in Tennessee; and that the lands in dispute, since the sale to Peacher in 1857, have greatly depreciated in value.
It also appears that Peacher entered into possession under his purchase, and held and cultivated the lands *191 up to 1861; and that Drane took possession after him, under his purchase, and peaceably held and occupied it until his death; and that his widow still remains in the uninterrupted possession and enjoyment of the land.
Under this state of facts, the Chancellor decreed for the complainant, dismissed the cross-bill, confirmed the sale to Drane, and divested the title out of Sarah E. Blair, and vested it in the executrix and devisees of Drane; from which Mrs. Drane appealed in error, to this Court.
It is clear, under this state of facts that the conveyance from J. A. Elliott, J. H. Blair and others, executed to Peter Peacher on the 24th of January, 1857, was inoperative to convey the title of Haynes and wife to the land assumed to be sold; as well also as the defendant, Mary E. Blair’s interest therein. Whatever may have been the opinion of the heirs of George Elliott, deceased, as to the validity of the division of the estate of their ancestor, and the -legal effect of the receipt or acquittance executed by' Haynes and wife at the time, it is clear that this proceeding, under well-established principles, did not divest the title of Mrs. Haynes to her one-sixth undivided interest in the land.
It is equally true, that James Blair, the father of Sarah E. Blair, by his uniting in the deed, could not divest his daughter of her undivided sixth in the land! He was merely tenant by the courtesy, and his deed could have no other effect than to carry his interest, as such, to the purchaser.
The conveyance by Peacher, in trust, to Kesee, communicated to him' the same estate or interest in the *192 land which he derived from the Elliotts and Blair, and none other — no greater and no less.
But, it is insisted that the sale made under the order of the Chancery Court, in the case of Short & Co. vs. Peacher et al., was absolutely void, and communicated no title whatever to Drane, the purchaser at the commissioner’s sale. The grounds relied on for this position, are, that Sarah E. Blair was a necessary party to that suit, and being an infant, any decree made to sell her lands was an absolute nullity.
As a general proposition, it is true that a Court of Chancery can make no binding decree in any case, unless it has jurisdiction, both of the subject matter, and also of the person of the defendant. This principle is alike applicable to this case as well as to all others. But, was Sarah E. Blair a necessary party in the case of Short & Co. vs. Peacher et al.? We think, most clearly not. That was a bill brought by creditors seeking to set aside the trust from Peacher to Kesee, on the grounds of fraud, or to secure a sale of the property conveyed, and to subject the surplus which might remain after satisfying the trust debts, to the payment of the complainant’s demand. The deed conveyed a very large amount of real and personal property, besides a portion of the land in dispute — a part having been previously sold off. No less than forty-seven slaves, with all the bargainor’s stock — horses, mules, cattle, sheep, hogs, and farming implements of every kind and description, were included in the deed. Peacher was the debtor, and the complainants sought to subject this property, or the surplus, to the satisfaction of their debts, which were *193 not included in the trust; and clearly, no Court would hold that they had not the right to do so. ' No decree was sought against either Haynes and wife, or Sarah E. Blair; and their rights remained unaffected by it. True, they had a large interest in a ‘ portion of the. land sold, which they could assert as readily after the rendition of the decree confirming the sale, as before.
The doctrine insisted on for the defense, and found in the cases of Frazier & Tullos, Ex’rs, etc. vs. Pankey et al., 1 Swan, 75, and Davidson et al. vs. Bowden et al., 5 Sneed, 129, has no application to this case. It does not involve either the jurisdiction of a Court of Chancery to convert the real estate of infants, in view of our own statutory regulations upon the subject, or the inherent jurisdiction of. a Court of Equity. If such were the application, the doctrine of the above recited cases, with many others of the same class, would be applicable, and a sale of an infant’s real estate, without proper jurisdiction of the person, would be void.
The sale not' being, as insisted, utterly void, it is capable of confirmation. And the next question is: Will the Court confirm it as to the minor, Sarah E. Blair, and compel the devisees of the purchaser, Drane, to take the after-acquired title of Haynes and wife ?
The established rule of law is, that, if a party fraudulently sell and convey land to which he has no title, the vendee who comes into a Court of Chancery to rescind the contract, will not be compelled to take an after-acquired title: Woods vs. North & Johnson, 6 Hum., 309; Blakemore vs. Shelby, 8 Hum., 430. Here *194 we think, there is no fraud, either in fact or in law. The Commissioner’s sale was public, and conducted under the orders of the Court, and confirmed without objection. The fact that the title from the Elliotts and Blair to Peacher was defective, does not appear to have been known to Peacher, when he conveyed in trust to Kesee; nor does it appear that it was known to any of the parties to the suit of Short & Co. vs. Peacher et al., in which the decree of sale was made. How, then, could this fact be held as a fraud upon the purchaser? It is wholly different from the case of Wood vs. North & Johnson. There the sale was by the executor, without anything in the Will from which he could infer that he had any power to sell, and it was held the false representation of the executor in assuming to sell without authority under the Will, had the effect to deceive the bidder, and he was relieved of his purchase. No deception was practiced by any one in the conduct of the sale under consideration, and Haynes and wife’s title is now tendered; and we think the purchaser, under the well-established principles of this Court, is bound to accept it; Blakemore vs. Shelby, 8 Hum., 439; Frost vs. Brunran, 6 Yer., 36; and authorities cited.
As to the remaining question, whether the Court will adopt and ratify the sale as to the defendant, Sarah E. Blair, and thereby complete the title in the purchaser’s devisees, there is one prevailing rule running through all of our reports, and that is, that the Courts will not set aside, for irregularities merely, the sale of an infant’s estate where it is advantageous to the infant. *195 In the case of Kirkman et al., ex parte, 3 Head, 518, this Court went further, and upon the same principles, adopted a private sale made by a next friend, without any decree authorizing him to sell. The proof in this case is overwhelming, that it is greatly to the interest of the minor that the sale should be adopted for her benefit; and her testamentary guardian is before the Court insisting on it; and in view of all the facts, we are unable to see any valid reason why it should not be done.
It works no injury to the purchaser, for thereby, he gets a good title to the same land he supposed he was buying when he bid it off, and at the same price at which he agreed to accept it. The fact that the land has since depreciated in value, and the interest accumulated on his debt, are his misfortunes and not the fault of the minor.
The decree of the Chancellor must be confirmed, and the cause remanded.